UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SHANNON LEE DERTZ,

       Plaintiff,

v.                     Case No. 24-cv-1213-pp

PETE STIEFVATER, *et al.*,

       Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

Plaintiff Shannon Lee Dertz, who is incarcerated at the Drug Abuse Correctional Center and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his civil rights. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1.

**I. Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prison trust account. Id.

On September 26, 2024, the court ordered the plaintiff to pay an initial partial filing fee of $14.32. Dkt. No. 5. The court received that fee on October 21, 2024. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

**II.     Screening the Complaint**

    A.     Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v.

Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.   The Plaintiff's Allegations

The complaint involves events that allegedly occurred while the plaintiff was incarcerated at Sanger Powers Correctional Center in Hobart, Wisconsin. Dkt. No. 1 at ¶7. It names as defendants Captain Pete Stiefvater, Captain Terrence Jaegar from Winnebago Correctional Center, nurses Jessica Hennings and Amy Geyso and Dr. Craig Schoenecker. Id. at ¶¶4–6. The plaintiff sues the defendants in their individual capacities only. Id.

The plaintiff alleges that he has bipolar disorder, anxiety disorder and insomnia. Id. at ¶8. He alleges that in November 2023, he was suffering from these mental health issues and needed to speak with staff from the

Psychological Services Unit (PSU). Id. at ¶9. He says he "sent numerous request slips to see psychological services" and was told that "an appointment was made," but that he never received the date for the appointment and never saw a psychologist. Id. He alleges that on November 15, 2023, he submitted another request slip, and Nurse Hennings told him that medication had been ordered and that he was "scheduled with psychiatry" in about a month. Id. at ¶10. He says Hennings "avoided the main question," and that he was again "being denied treatment." Id.

The plaintiff alleges that four days later, he asked the Health Services Unit (HSU) if he could speak privately with a psychiatrist. Id. at ¶11. He alleges that Nurse Geyso responded, "It's not possible." Id. The plaintiff responded and explained that he was not comfortable discussing his mental health "in front of the nurses," but Hennings told him, "All telepsych appointments take place in HSU." Id. at ¶12. He claims this constituted an intentional infliction of emotional distress. Id. On December 5, 2023, the plaintiff spoke with Dr. Schoenecker and explained his discomfort. Id. at ¶13. He says that Schoenecker "did and said everything but, try and help [him]" and told him to exercise, meditate and eat healthy. Id. at ¶¶13–14. The plaintiff says he later learned that Schoenecker told staff (including Stiefvater, Hennings and Geyso) that the plaintiff was "very unhappy with his vocational placement" and wanted to transfer to a different institution. Id. at ¶15. The plaintiff denies this. Id. He later asked Stiefvater about this conversation, but Stiefvater said he did not know Schoenecker. Id. at ¶16. The plaintiff claims that Schoenecker knew about his mental health

4

concerns and "could have scheduled a one on one visit," but that he refused to see the plaintiff one-on-one and instead "conspired" with Hennings and Geyso and "dismissed any and all mental health needs." Id. at ¶18. He claims this violated "hipaa law" and left him "emotionally/mentally distressed." Id. at ¶¶19–20.

The plaintiff alleges that on January 17, 2024, he asked Stiefvater if he could use the conference room for a psychologist visit, but Stiefvater told him that the HSU used the room "for Hippa." Id. at ¶21. The plaintiff claims this contradicts what the HSU told him about one-on-one visits with PSU staff. Id. at ¶¶21–23. On January 24, 2024, the plaintiff sent a request to the HSU "for all information regarding notes, emails sent and received from HSU and Psychological services." Id. at ¶24. He says Hennings responded "there isn't any," which he says contradicts her previous statement that "an appointment was made." Id. On February 6, 2024, the plaintiff had a tele-visit with Schoenecker, but this visit was held "in front of nurses" including Hennings. Id. at ¶25. The plaintiff says he "was under constant stress, depressed and had bad anxiety" during this tele-visit. Id. The plaintiff says he needed medication and "to speak to someone," but he had difficulty communicating that to Schoenecker. Id. He ended the tele-visit early after Hennings started laughing at him. Id.

The plaintiff claims that Hennings, Geyso and Schoenecker "intentionally inflicted emotional distress upon [him]" and "deliberately and intentionally disregarded [his] mental-health needs," which "constitutes the tort of

negligence." Id. at ¶27. He also claims that these defendants conspired against him "without the need or perverse [*sic*]." Id. at ¶29. He says Captains Jaeger and Stiefvater dismissed or disregarded his institutional complaints "for bias reasons and no other." Id. at ¶¶32–33. The plaintiff asks the court to order Stiefvater and Jaeger terminated from their positions and Hennings and Geyso moved to another facility "where they can be monitored by higher authority so practicing of their deliberate indifference acts against other inmates do not continue." Id. at ¶¶34–35. He also seeks unspecified injunctive relief and compensatory and punitive damages "in an amount to be determined at a trial." Id. at ¶37.

C. Analysis

The plaintiff alleges that the defendants did not provide adequate mental health treatment. The court analyzes these allegations under the Eighth Amendment. See Estelle v. Gamble, 429 U.S. 97, 103–04 (1976). To state a valid Eighth Amendment claim, the plaintiff must show that the defendants "actually knew of a serious health need and acted with deliberate indifference to the plaintiff's suffering." Howell v. Wexford Health Sources, Inc., 987 F.3d 647, 653 (7th Cir. 2021) (citing Farmer v. Brennan, 511 U.S. 825, 843 (1994)). An Eighth Amendment claim consists of both objective and subjective components. Farmer, 511 U.S. at 834. The plaintiff may satisfy the objective component by showing that he suffered from serious "mental health risks." Quinn v. Wexford Health Sources, Inc., 8 F.4th 557, 565 (7th Cir. 2021). The subjective component requires the plaintiff to show that the official was aware of but disregarded the "substantial risk of serious harm to" the plaintiff. Perez,

792 F.3d at 776. Neither negligence nor gross negligence is enough to support an Eighth Amendment claim. See Farmer, 511 U.S. at 835–36.

The plaintiff alleges that he suffers from bipolar disorder, anxiety disorder and insomnia. These allegations satisfy the objective component of an Eighth Amendment claim. See Johnson v. Prentice, 29 F.4th 895, 899 (7th Cir. 2022) (recognizing that bipolar disorder is a "serious mental illness"); Quinn, 8 F.4th at 560 (same for anxiety). The bigger question is whether the plaintiff adequately alleges that the defendants were deliberately indifferent to his conditions.

The plaintiff says he sent several requests to the PSU for treatment, but that those requests were denied or refused. But he does not say who denied or refused them. He says Hennings later made an appointment but did not give him the date. But he also says that she ordered him medication and told him he was scheduled for an appointment with the PSU a month later. The plaintiff says this constituted an intentional infliction of emotional distress. Although the plaintiff may have wanted treatment sooner, Hennings did not violate his rights by scheduling an appointment for him weeks out. These delays are common for non-incarcerated persons seeking mental health treatment and more common for incarcerated persons. See Berry v. Peterman, 604 F.3d 435, 442 (7th Cir. 2010); Knight v. Wiseman, 590 F.3d 458, 466 (7th Cir. 2009). The court will not allow the plaintiff to proceed on an Eight Amendment claim against Hennings.

The plaintiff takes issue with tele-visits taking place in the HSU in front of other nurses. He says he told this to Dr. Schoenecker, who saw and spoke with him but did not schedule him for a one-on-one appointment even though he allegedly could have. The plaintiff says that instead he had to have a tele-visit with Schoenecker in front of nurses, including Hennings. He says this caused him anxiety, and he ended the appointment early. Many of the plaintiff's allegations take issue with Sanger Powers's procedures for scheduling or holding PSU visits. But if the plaintiff's allegations are true—and the court must accept for purposes of this decision that they are—then Schoenecker knew the plaintiff preferred a one-on-one visit, could have arranged such a visit and declined to, instead forcing the plaintiff to have his tele-visit in front of other nurses that he knew would cause the plaintiff distress. Although these allegations are thin, at the screening stage they are sufficient to state an Eighth Amendment claim against Schoenecker.

The plaintiff also claims that Schoenecker, Hennings and Geyso conspired to deny him mental health treatment. Conspiracy is not an independent basis of liability for §1983 actions. Smith v. Gomez, 550 F.3d 613, 617 (7th Cir. 2008) (citing Cefalu v. Village of Elk Grove, 211 F.3d 416, 423 (7th Cir. 2000)). To proceed on his conspiracy claim, the plaintiff must show that "(1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights." Beaman v. Freesmeyer, 776 F.3d 500, 510 (7th Cir. 2015). Put differently, the plaintiff must "show an underlying constitutional violation" and "demonstrate

that the defendants agreed to inflict the constitutional harm." Hurt v. Wise, 880 F.3d 831, 842 (7th Cir. 2018).

The plaintiff has not satisfied this standard. He has not alleged facts suggesting that the defendants jointly decided to violate his rights or took any acts in furtherance of that alleged agreement. He simply alleges that their actions—informing him of PSU policy, scheduling his appointment a month out and Schoenecker's tele-visit with him—amounted to a conspiracy to deny him mental health treatment. As the court has explained, these allegations may support a claim against Schoenecker, but they do not support a claim that Schoenecker conspired with the nurses to violate the plaintiff's rights. The court will not allow the plaintiff to proceed on a conspiracy claim.

The plaintiff says that Hennings laughed at him during his appointment with Schoenecker. To the extent he wants to proceed on these allegations, he has not stated a claim. Except in exceptional circumstances, verbal abuse or harassment from prison officials does not violate the Eighth Amendment. See Lisle v. Welborn, 933 F.3d 705, 719 (7th Cir. 2019) (citing Beal v. Foster, 803 F.3d 356, 357–58 (7th Cir. 2015)). Although Hennings may have acted unprofessionally by laughing at the plaintiff, this kind of conduct by prison officials does not violate the Eighth Amendment.

The plaintiff also seeks to proceed on state law claims of intentional infliction of emotional distress and negligence. Federal courts may exercise supplemental jurisdiction over state law claims that are "so related to claims in the action within [the court's] original jurisdiction that they form part of the

9

same case or controversy under Article III of the United States Constitution." 28 U.S.C. §1367(a). Intentional infliction of emotional distress and negligence are not federal claims. But the plaintiff may raise these claims under state law. Because the facts underlying the plaintiff's claims of intentional infliction of emotional distress and negligence are the same as those underlying his Eighth Amendment claim, the court will exercise supplemental jurisdiction over these state law claims against Schoenecker and Hennings.

The court will not allow the plaintiff to proceed on any claim against Nurse Geyso. The plaintiff's allegations against Geyso are scant. He alleges that she responded to one of his requests by telling him he could not speak with a psychiatrist in private according to Sanger Powers policy. He then says, without factual support, that Geyso was part of the "conspiracy" with Schoenecker and Hennings. But as the court explained above, the plaintiff has not alleged facts to support a claim of conspiracy. He then asserts that Geyso, like Schoenecker and Hennings, inflicted emotional distress on him and disregarded his mental health needs. But the complaint does not allege facts showing that Geyso had any involvement in the plaintiff's treatment or treatment decisions. The plaintiff may proceed only against defendants who were personally responsible "for any claimed deprivation of a constitutional right." Miller v. Smith, 220 F.3d 491, 495 (7th Cir. 2000). Because the complaint fails to establish Geyso's personal responsibility in the alleged deprivation of the plaintiff's Eighth Amendment rights, it does not state a claim against her.

The plaintiff claims that Captains Stiefvater and Jaeger denied his institutional complaint or refused to process it "for bias reasons," but he does not explain what those "reasons" were. Yet he also says he exhausted his administrative remedies and cites the complaint examiner's report of the complaint he submitted. Dkt. No. 1 at ¶¶22, 28. Regardless, the plaintiff has no inherent constitutional right to a prison grievance system. Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996). "Prison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause, and so the alleged mishandling of [an incarcerated person's] grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim." Owens v. Hinsley, 635 F.3d 950, 953 (7th Cir. 2011) (citations omitted). The plaintiff does not state a claim about the alleged mishandling or denial of his institutional complaint. The court will dismiss defendants Stiefvater and Jaeger.

The plaintiff alleges that Dr. Schoenecker and Nurses Hennings and Geyso violated "the hipaa law." To the extent the plaintiff seeks to proceed under the Health Insurance Portability and Accountability Act (HIPAA), he has not stated a claim. HIPAA does not provide private citizens a cause of action. See Carpenter v. Phillips, 419 F. App'x 658, 659 (7th Cir. 2011) (citing cases). Even if the plaintiff had alleged facts showing how the defendants violated HIPAA, he would not state a cognizable claim under §1983. Id.

As a final note, the complaint asks the court to order Sanger Powers to fire or transfer the defendants. The court has no authority over hiring or firing

11

Case 2:24-cv-01213-PP    Filed 12/03/24    Page 11 of 14    Document 9

decisions of institutions and cannot order Sanger Powers to demote, fire or transfer its employees. Nor can the plaintiff seek injunctive relief against the defendants in their individual capacities. See Greenawalt v. Ind. Dep't of Corr., 397 F.3d 587, 589 (7th Cir. 2005) (citing Luder v. Endicott, 253 F.3d 1020, 1024–25 (7th Cir. 2001)) ("[S]ection 1983 does not permit injunctive relief against state officials sued in their individual as distinct from their official capacity."). He may proceed only on his request for damages.

In summary: the plaintiff may proceed on an Eighth Amendment claim against Dr. Schoenecker and on state law claims of intentional infliction of emotional distress and negligence against Dr. Schoenecker and Nurse Hennings for damages. He may not proceed on any other claim or against any other defendant or seek any other form of relief.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DISMISSES** defendants Stiefvater, Jaegar and Geyso.

Under an informal service agreement between the Wisconsin Department of Justice and the court, the court will electronically transmit a copy of the complaint and this order to the Wisconsin Department of Justice for service on Jessica Hennings and Craig Schoenecker. Under the informal service agreement, the court **ORDERS** those defendants to respond to the complaint within 60 days.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$335.68** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Superintendent of the Drug Abuse Correctional Center, where the plaintiff is confined.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

---

[1] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

Office of the Clerk
United States District Court
Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

Dated in Milwaukee, Wisconsin this 3rd day of December, 2024.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**

14
Case 2:24-cv-01213-PP   Filed 12/03/24   Page 14 of 14   Document 9